**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NEODRON LTD.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 6:20-cv-00212-ADA |

# **PLAINTIFF NEODRON LTD.'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS


***I. INTRODUCTION*** **_ 1_**

***II. BACKGROUND OF ASSERTED PATENTS*** **_ 1_**

**A. U.S. Patent No. 7,821,502 ("'502 patent") 1**

**B. U.S. Patent No. 10,146,351 ("'351 patent") 2**

***III. CLAIM CONSTRUCTION PRINCIPLES*** **_ 4_**

***IV. DISPUTED TERM FOR THE '502 PATENT*** **_ 5_**

**A. "sensing cells" (claims 1-2, 4-8, 11-14, 16) 5**

**B. "sensing area" (claims 1-2, 4-8, 11-14, 16) 8**

**C. "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" (claims 1-2, 4-8, 11-14, 16) 11**

***V. DISPUTED TERM FOR THE '351 PATENT*** **_ 13_**

**A. "a [first]/[second] variable resistance element" (claims 1-10 for [first] and claims 5-7 for [second]) 13**

**B. "a limiting resistance element connected in series with the [first]/[second] variable resistance element" (claims 4 [first] and 7 [second]) 14**

**C. "a bias resistance element connected in parallel with the [first]/[second] variable resistance element" (claims 3 [first] and 6 [second]) 14**

**D. "circuitry operable to determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel" (claims 1-10) 16**

**E. "wherein the circuitry is operable to determine an amount of force applied to the sensing area using a differential measurement" (351 claim 9) 16**

1. The term "circuitry" is an ordinary term that requires no construction. 17
2. The term "circuitry" is not subject to § 112 ¶ 6. 18
3. Even if § 112 ¶ 6 should apply (contrary to fact and law), Defendant's proposed structures are wrong. 19

## TABLE OF EXHIBITS AND ABBREVIATIONS

| Ex. | Document Description | Abbreviation |
|---|---|---|
| 1 | Declaration of Richard A. Flasck in support of Neodron Ltd.'s opening claim construction brief | Flasck. Decl. |
| 2 | U.S. Patent No. 7,821,502 | '502 Patent |
| 3 | U.S. Patent No. 10,146,351 | '351 Patent |
| 4 | Apple's Petition for IPR re: '502 patent | |
| 5 | Markman Hearing Transcript of June 30, 2019, in Neodron v. Dell Tech., Inc. et. al | |

## I. INTRODUCTION

Neodron and Defendant Apple offer not just competing claim-construction proposals but completely different approaches to claim construction. Neodron's claim term proposals stay consistent with the term's plain meaning and clarify that meaning only when necessary under controlling law, or when helpful to narrow the disputes for the Court. Neodron's proposals are also the only ones that are faithful to the full scope of the intrinsic record. And Neodron's proposals are the only ones that are supported by the key question we must ask during claim construction: what would a person of skill in the art understand the terms to mean in light of the record? *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

Some of Defendant's proposals, on the other hand, ask this Court to recharacterize and burden clear terms by importing artificial and extraneous baggage. But Defendant cannot point to any clear or unmistakable disclaimer or lexicography to support those importations. Thus, accepting their construction can only invite reversible error. *See, e.g.*, *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005). Indeed, for many of the proposals, Defendant's proposed constructions are inconsistent with the claim language itself. On other issues, Defendant goes in the extreme opposite direction and appears to ignore and render superfluous certain words in the claim. But that too invites error of a different sort, because "interpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004). In either event, each results-oriented proposal is improper under controlling law—and do nothing to help the factfinder, but rather only make that job more difficult. They should be rejected.

## II. BACKGROUND OF ASSERTED PATENTS[1]

### A. U.S. Patent No. 7,821,502 ("'502 patent")

The '502 Patent (Ex. 2), titled "Two-dimensional Position Sensor," was issued by the United States Patent and Trademark Office on October 26, 2010. Atmel Corporation, the original

[1] In addition to the '502 and '351 patents, U.S. Patent No. 9,823,784 ("'784 patent) is also at issue in this case, but the parties have resolved their disputes for the terms in the '784 patent.

assignee of the ’502 Patent, was a pioneer in the development of practical and high-performing touch sensor devices. The ’502 Patent teaches innovative designs for positional capacitive touch sensors that provide accurate touch response while minimizing the number of sensing channels by employing a trace layout that includes wrap-around connection outside the sensing area. *See* ’502 Patent at 1:27-2:61; 3:10-47.

For example, in one embodiment of the ’502 Patent, a position sensor comprises a substrate with an arrangement of electrodes mounted on a surface, where the electrodes define an array of sensing cells arranged in columns and rows to for a capacitive sensing area, where the sensing cells each include a column sensing electrode and a row sensing electrode, where the column sensing electrodes of the same column are electrically coupled together and the row sensing electrodes of the same row are electrically coupled together.

For example, Fig. 3 of the ’502 Patent shows an embodiment that has row wrap-around connections (e.g., element 38), which lie “outside of the sensing area…to ensure the respective row sensing electrodes of the other rows are connected together.” ’502 Patent at 6:53-7:10 (“The connection **38** runs around the outside of the sensing area to connect the electrode **34** providing the row sensing electrodes in columns x1 and x2 of row y2 with the electrode **36** providing the row sensing electrodes in columns x3 and x4 of row y2. Thus, all row sensing electrodes in this row are electrically connected together. Similar wrap-around connections outside of the sensing area are made to ensure the respective row sensing electrodes of the other rows are connected together.”).

### B. U.S. Patent No. 10,146,351 (“’351 patent”)

The ’351 patent (Ex. 3) is titled “Position-sensing and force detection panel.” It describes a touch position sensor with force detection circuitry for determining the amount of force applied to the touch panel. ’351 patent at Abstract. In one embodiment, the touch sensor uses a “mutual capacitance” configuration that consists of two layers of horizontal and vertical conductors that intersect at nodes. *Id.* at 1:37–54. When an object (such as a finger) touches the surface of the

panel, a change in capacitance occurs at one or more of the nodes. *Id.* This allows the touch sensor to determine (a) that touch has occurred and (b) the location of the touch. *Id.*

These concepts are illustrated in annotated Figure 2 below. In the figure, the horizontal layer "drive electrodes 4X" and vertical "sense electrodes 5Y" crossover at "intersections 11" *Id.* at 3:25-48. The drive electrodes and sense electrodes are connected via "connecting lines" to "control unit 20." *Id.* at 3:42–65. Using those lines, the control unit senses the changes in capacitance at each intersection to detect the presence and location of touches. *Id.*




FIG. 2

The '351 patent touch sensor includes an associated "force sensor" that measures the amount of force applied to the panel. *Id.* at 4:3–25. The force sensor distinguishes between different touch events, such as a soft touch or firm press. *Id.* The force sensor can compare amount of force detected against a threshold and execute different functions depending on whether it exceeds the threshold. *Id.*

The '351 patent is directed to a ***resistive*** force sensor by describing "a *resistive* force sensitive element" that "can be used to measure the amount of force applied to the panel." *Id.* at 4:17-25. A resistive force sensor measures force by measuring changes in resistance of material. This works because the resistance of the material depends on the amount of force applied. If

enough force is applied, the resistance decreases; if little or no force is applied, the resistance remains the same.

The ’351 patent discloses a mobile electronic device with a novel combination of elements, including a display and related components, capacitive touch sensor, resistive force sensor, and force sensor circuitry with an integrator circuit and voltage driver. For example, Figure 1 shows the touch panel and display in an exemplary embodiment:




## III. <u>CLAIM CONSTRUCTION PRINCIPLES</u>

The “claim construction inquiry . . . begins and ends in all cases with the actual words of the claim.” *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Indeed, “the claims themselves provide substantial guidance as to the meaning of [] terms.” *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

Thus, when conducting a claim construction inquiry, “district courts are not (and should not be) required to construe every limitation present in a patent’s asserted claims.” *O2 Micro Int’l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). This is because claim construction is “not an obligatory exercise in redundancy.” *US Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Where a term is used in accordance with its plain meaning, the court should not replace it with different language. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) (“we do not redefine words. Only the patentee can do that.”).

To the contrary, there is a “heavy presumption” that claim terms carry their “full ordinary and customary meaning, unless [the accused infringer] can show the patentee expressly

relinquished claim scope." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). Because that plain meaning "is the meaning that the term would have to a [POSITA] in question at the time of the invention," construing claims often "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1313-14.

"There are only two exceptions" in which claim terms are not given their full ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365. Without clear and unambiguous disclaimer or lexicography, courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *See JVW Enters.,* 424 F.3d at 1335. Similarly, a statement during patent prosecution does not limit the claims unless the statement is a "clear and unambiguous disavowal of claim scope." *Omega Eng'g,* 334 F.3d at 1325.

## IV. DISPUTED TERM FOR THE '502 PATENT

### A. "sensing cells" (claims 1-2, 4-8, 11-14, 16)

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning, which is "sensing cells" | "**the area whose boundaries are fixed by the portions of a column sensing electrode and a row sensing electrode at the intersection of a row and column in the array that forms the sensing area**"<br><br>Otherwise, *indefinite* |

The "claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Teleflex, Inc*, 299 F.3d at 1324. When conducting a claim construction inquiry, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l*, 521 F.3d at 1362. Indeed, as the court in *Philips* held "*the claims themselves* provide substantial guidance as to the meaning of [] terms." *Phillips*, 415 F.3d at 1314 (emphasis added).

The first dispute involves a textbook example in which these bedrock principles of claim construction apply. The claim term "sensing cells" is a clear and simple one from the perspective of one of skill in the art and in the context of this patent. It refers to the *cells* in the capacitive sensing area that include electrodes to enable the touch-*sensing* functionality.

In this case, the claim themselves provide an abundance of guidance and context to the disputed term—and this confirms beyond reasonable debate that the term needs no further construction. Indeed, the clause in which the term is introduced could not be clearer. Annotated for illustrative purposes below, it provides further guidance to describe the sensing cell in no less than 5 ways:

> wherein the electrodes define an array of sensing cells *(1) arranged in columns and rows (2) to form a capacitive sensing area of the sensor, each sensing cell (3) including a column sensing electrode and a row sensing electrode, (5) the column sensing electrodes of sensing cells in the same column being electrically coupled together and (5) the row sensing electrodes of sensing cells in the same row being electrically coupled together*

'502 patent claim 1 (emphasis and annotations added); Flasck Decl. (Ex. 1) ¶ 34. Given the clear ordinary meaning to a person of skill in this art—and the additional substantial guidance and context in the claim itself—the term needs no further construction.

Using its completely different and incorrect approach to claim construction, Defendant asks this Court to replace the two simple claim words—which have substantial additional context and guidance in the claim itself—***with thirty-one other words.*** No controlling authority supports this approach. Beyond being wholly unnecessary to a person of skill in the art, their construction also suffers from additional defects. For example, by using phrases not found in the patent, it injects more questions than it answers. Moreover, as another example, some of the language Defendant seeks to inject, such as "the portions of a column sensing electrode and a row sensing electrode at the intersection of a row and column," are less clear than the claim language itself. And they appear to merely add requirements of examples of embodiments in the patent. But without clear and unambiguous disclaimer or lexicography by the patentee, courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written

description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *See JVW Enters.,* 424 F.3d at 1335. Even worse, by requiring so many additional requirements that are not in the claim itself, Defendant appears to add language that is inconsistent with the claim language itself and thereby appears to create tension with that language. For instance, "the portions of a column sensing electrode and a row sensing electrode at the intersection of a row and column" appears to create tension with dependent claim 11 that does not and could not require these importations. That is because, in claim 11, "the column sensing electrode and the row sensing electrode in each sensing cell are *interleaved* with one another." Flasck Decl. ¶ 35. Defendants' proposal should be rejected.

Missing any factual or legal support for their primary proposal, Defendants suggest that if this Court were to reject their primary proposal, then alternatively, the entire patent is invalid for indefiniteness. But with a term as clear to a person of skill in the art as "sensing cells," this scare tactic does not pass the straight-face test.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014). "A patent is presumed valid under 35 U.S.C. § 282" and any defense of indefiniteness has to be proven "by clear and convincing evidence." *Biosig Instruments, Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1377 (Fed. Cir. 2015). This burden falls on the accused infringer. *See Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1327 (Fed. Cir. 2008).

Here, Defendants cannot come close to meeting their burden. Defendants have not explained the basis for their alternative argument—and there is no legitimate one. Prior defendants did not suggest the term is indefinite. *See Neodron v. Dell Tech. Inc.*, Case No. 1:19-cv-00819-ADA, D.I. 82 (W.D. Tex. June 12, 2020) (Joint Claim Construction Statement) (agreed construction for "sensing cells" as "Plain and ordinary meaning, which is 'sensing cells'"). And these very Defendants also did not remotely suggest so in parallel PTAB proceedings using the same claim construction standards that are applicable here. *See* Ex. 4 (Apple's Petition for IPR re:

‘502 patent), e.g., at 17-25. Nor could they. With a term as clear to a person of skill in the art as “sensing cells” is—and with so much guidance from surrounding claim language and so many examples of those sensing cells in the patent’s intrinsic record—there is more than sufficient certain about the scope of the term and claim here.

**B. “sensing area” (claims 1-2, 4-8, 11-14, 16)**

| Neodron’s Proposed Construction | Defendant’s Proposed Construction |
|---|---|
| “an area defined by the sensing cells” | “**an area whose boundaries are fixed by the outermost edges of the sensing cells of the position sensor**”<br><br>Otherwise, *indefinite* |

Claim construction is “not an obligatory exercise in redundancy.” *US Surgical Corp,* 103 F.3d at 1568. Where a term is used in accordance with its plain meaning, the court should not replace it with different language. *Thorner*, 669 F.3d at 1366-67 (“we do not redefine words. Only the patentee can do that.”). To the contrary, there is a “heavy presumption” that claim terms carry their “full ordinary and customary meaning, unless [the accused infringer] can show the patentee expressly relinquished claim scope.” *Epistar Corp*, 566 F.3d at 1334. Because that plain meaning “is the meaning that the term would have to a [POSITA] in question at the time of the invention,” construing claims often “involves little more than the application of the widely accepted meaning of commonly understood words.” *Phillips*, 415 F.3d at 1313-14.

This next “dispute” features another attempt by Defendant to replace clear claim language and a clear construction by this Court with a fifteen-word redefinition. This time, Defendant also attempts to revisit an issue this Court has already decided. But as this Court correctly determined, “sensing area” needs no further construction beyond the one this Court already gave it: “an area defined by the sensing cells.”

Indeed, as this Court may recall, the Court and parties had extensive discussion over this term in the prior *Markman* hearing. Indeed, the same counsel arguing for revisiting the Court’s ruling went through a lengthy presentation asking whether they could get what appeared to be an

expert opinion from this Court on the application of the term—and whether the precise boundary lines of the sensing area is a red line or a green line or some other line microns to the left or right. But this Court correctly acknowledged that its construction resolved the dispute about claim scope:

> MR. HEINTZ: So the sensing area can be the green line, but cannot be the blue or red dash line?
>
> THE COURT: Correct.
>
> MR. HEINTZ: Can the Court offer any guidance as to how far out the green line can extend while still being inside the sensing area under the Court's construction?
>
> THE COURT: No. The answer's no.
>
> You know, talking to my law clerk, we believe that one -- a person of skill in the art would be able, when they touch it, to accurately detect the appropriate amount. But all I can say, at this moment, is that the green area is in and the yellow area is out of the sensing area.

Ex. 5 (Markman Hearing Tr.) at 35.

Unsatisfied with this lengthy and unusual *Markman* examination of "what's in or out" of the patent figure, counsel tried to again add more words and requirements to the patent claim:

> MR. HEINTZ: Yes, your Honor.
>
> One question. During your explanation of the sensing areas, you mentioned that perhaps a motion would be in order if there's some disagreement over what the Court's construction means. And I sit here today, I'm anticipating there will be fights over whether -- where the border is between the red line and the green line.
>
> Would the Court entertain a motion if, in fact, that gets to be an issue that's contested between the parties? I'm sorry, your Honor, I cannot hear you.

Ex. 5 (Markman Hearing Tr.) at 38.

But the Court again correctly rejected this legally inappropriate and actually baseless attempt:

> What I would encourage you all to do on this one issue with regard to sensing area, if you realize that what you're fighting over on infringement, for example, is plaintiffs saying there is infringement because of X and your expert agrees factually that that's how it functions, but you're saying there's not infringement because that is not included in the sensing area, you guys can't cross-examine the experts over that because they're just going to say nuh-uh.
>
> And so, if you all get to that point, what I'm encouraging you to do is contact the Court, and if I have to do an additional Markman, once you guys have focused on what it is, I will allow you guys -- I've gotta quit saying that. I will allow the attorneys to explain to me what position you are each taking factually with respect to sensing area. And to the extent I've got to construe what sensing area -- I'm not going to construe the facts, but once -- if you can put it into context for me what the fight is over what sensing area means in a discrete, one side says it's A and one side says B, I will make that legal decision for you right at that point, if that's the fight over sensing area.

Ex. 5 (Markman Hearing Tr.) at 39.

A few short months later, without any real dispute between infringement or validity experts, Defendant seeks to revisit the same issue, albeit in a different way. In seeking to revisit—and contradict—this Court's prior holding, Defendant seeks to inject "an area whose boundaries are fixed by the outermost edges of the sensing cells of the position sensor." This is another attempt to add many more words and redefine the claim scope—and circumvent the prior construction and follow-on guidance by this Court—without any legal or factual support. But the Court got it right the first time when it resolved the claim construction "dispute" concerning this same term. Whether that resolution was to the Defendant's liking or enough to bolster another non-infringement argument does not make it incorrect or insufficient. The term needs no further construction.

Defendant's proposed importations are also substantively improper. With so many imported words beyond this Court's prior construction—including many that *do not appear in the patent itself*—it is unclear whether the Defendants are attempting to limit the claim to an

embodiment in the patent. But even so, *some* supporting examples or embodiments is not sufficient to change the nature of the claim term. To the contrary, without clear and unambiguous disclaimer or lexicography, courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention *or even describes only a single embodiment*." *See JVW Enters.,* 424 F.3d at 1335 (emphasis added). But here, Defendant has not suggested any such lexicography or disclaimer. Adopting their construction would, therefore, invite reversible error. *Id*.

Continuing their trend of asserting that the term is indefinite if they don't get the redefinition they prefer, Defendants again contend in the "alternative[]" that this term is indefinite. But just like the last term, that contention does not pass muster. And like the last term, these very Defendants also did not remotely suggest so in parallel PTAB proceedings using the same claim construction standards that are applicable here. Ex. 4 (Apple's Petition for IPR) at 18-23.

Indeed, this very issue was already resolved by this Court because this alternative contention actually was presented by prior defendants in the briefing that preceded that *Markman* hearing. As Neodron made clear then—and as is true now—that "alternative" contention is wrong. There is no merit whatsoever to Defendant's vague accusations that "Neodron's constructions would render the claim indefinite because it offers no guidance to where the boundary of the sensing area should be drawn." *E.g.*, Defs.' Resp. Br. at 21. As a procedural matter, this meritless contention is obviously flawed—and fatally so.

### C. "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" (claims 1-2, 4-8, 11-14, 16)

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which is "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" | "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area," where the row wrap-around connection must wrap around electrodes in the row other than the two electrodes at opposing ends of the row, **but need not have any** |

| | |
|---|---|
| | **particular shape and need not be connected to the ends of the two electrodes at opposite ends of the row**. |

As with the last term, Defendants also seek to revisit a dispute that was already resolved by this Court—and accepted by counsel here—during the prior Markman on this next "dispute." Specifically, during the previous Markman hearing, the Court resolved the dispute on this term and both sides accepted that resolution:

> THE COURT: My understanding is the next claim term, "wherein row sensing" -- I'm not going to read the whole thing but begins with "wherein row sensing electrodes," that there is no longer a dispute; is that correct?
>
> MR. MIRZAIE: That's plaintiff's understanding, as well, your Honor. Yes.
>
> MR. CUNNINGHAM: Yes, your Honor. We've accepted the preliminary construction on that term.

Ex. 5 (Markman Hearing Tr.) at 40.

This time around, the resolution is, again, apparently not good enough for Defendant's invalidity arguments, so they would like to add a lengthy clause—and all the baggage and confusion that comes with it—at the end of this Court's construction of the term. That should fail. The term needs no further construction.

Defendant's proposed add-on also is substantively improper and incorrect. On this term, Defendant has refused to accept Neodron's proposal, which is perfectly consistent with the claim language itself, but makes clearer to a jury that a "wrap-around connection" is a connection that wraps or runs around the outside of the sensing area. On the other hand, Defendant's recent refusal to accept this language only confirmed that the clarification might be necessary, because Defendant re-quotes the claim language, but appear to treat ***any*** connection as a "***wrap-around***" connection. In other words, they do not give any meaning to the term "wrap-around." But this invites error, because "interpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs.*, 378 F.3d at 1410; *see also Merck & Co. v. Teva Pharm.*

*USA, Inc.*, 395 F.3d 1364, 1372 (Fed.Cir.2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so). This Court should reject Defendants' proposal.

## V. DISPUTED TERM FOR THE '351 PATENT

### A. "a [first]/[second] variable resistance element" (claims 1-10 for [first] and claims 5-7 for [second])

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a [first]/[second] non-capacitive sensor element, the resistance of which varies in relation to applied force" | "a [first]/[second] element the electrical resistance of which varies in relation to applied force" where the "variable resistance element" "is limited to a type of resistive force sensor—as opposed to a capacitive force sensor." |

This is a term that was already dealt with in earlier Neodron litigation before this Court, where the parties in those cases agreed that "first variable resistance electrode" in the related U.S. Patent No. 10,365,747 is to be construed as "first electrode in which the resistance of the material varies in relation to applied force." *See Neodron Ltd. v. Dell Tech. Inc.*, Case No. 1:19-cv-00819-ADA, D.I. 82 (W.D. Tex. June 12, 2020)[2] (Joint Claim Construction Statement).

While Neodron believes that the agreed construction in those earlier Neodron cases before this Court is appropriate for this same term in the related '351 patent at issue here, Neodron has further tried to narrow the dispute between the parties here by its current proposal. Neodron's proposal captures most of Defendant's proposal without complicating an already simple claim term. In contrast, Defendant's proposal complicates and burdens simple claim term with multiple clauses, negative limitation, and numerous and extraneous words. The Court should adopt Neodron's construction.

[2] There are multiple cases that were consolidated with this case: *Neodron v. Microsoft Corp.*, Case No. 1:19-cv-00874-ADA; *Neodron v. Amazon.com, Inc.*, Case No. 1:19-cv-00898-ADA; and *Neodron v. Samsung Electronics Co. Ltd.*, Case No. 1:19-cv-00903-ADA.

**B. "a limiting resistance element connected in series with the [first]/[second] variable resistance element" (claims 4 [first] and 7 [second])**

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which is "a limiting resistance element connected in series with the first variable resistance element." | "a **non-variable** resistance element connected in series with the [first]/[second] variable resistance element **that limits the maximum current flow through the variable resistance element to the input of the integrator circuit**" |

**C. "a bias resistance element connected in parallel with the [first]/[second] variable resistance element" (claims 3 [first] and 6 [second])**

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which is "bias resistance element connected in parallel with the first variable resistance element." | "a **non-variable** resistance element connected in parallel with the [first]/[second] variable resistance element **that provides a current path to the input of the integrator if the variable resistance element has a very high value**" |

These claim phrases are readily understandable to a person of ordinary skill and do not need further construction. Defendant's proposals confirm that each phrase, and each word within them, is readily understandable; they use virtually all of the same words in the claim phrase—including, e.g., "resistance element," "connected in series," and "connected in parallel." Defendant merely changes what is actually recited in the claim, including adding that each resistance element be "non-variable," that the limiting series resistance element "limits the maximum current flow through the variable resistance element to the input of the integrator circuit," and that the bias parallel resistance element "provides a current path to the input of the integrator if the variable resistance element has a very high value." None of these insertions has any merit.

First, the claims do not say "non-variable." Indeed, that insertion is unsupported by the claim itself. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claim construction inquiry … begins and ends in all cases with the actual words of the claim."). Defendant's proposals merely insert the word "non-variable" into claims that include no such word. In fact, the word "non-variable" appears nowhere in the claims, the specification,

or the prosecution history. And there is no technical reason why either of the resistance elements in dispute must be "non-variable." Flasck Decl. ¶ 49, 50.

Second, the claims do not say that the limiting resistance element of claims 4 and 7 must "limit[] the maximum current flow through the variable resistance element to the input of the integrator circuit" or that the bias resistance element of claims 3 and 6 must "provide[] a current path to the input of the integrator if the variable resistance element has a very high value." While Defendant has closely paraphrased each of these phrases from the non-limiting descriptions of exemplary embodiments, there is no clear and unambiguous language sufficient to import Defendants' extraneous words. At best, these phrases could be considered superfluous because they merely explain typical effects or behaviors of specific components of exemplary embodiments. Moreover, Defendant's language needlessly complicates the plain and readily understandable claim language. Notably, the specification does not state that, for example, the limit resistor *must* limit the maximum current flow to the current integrator input, or that it must *only* do so. Mr. Flasck explains that the effect described in each excerpt is merely one typical result of adding a resistance element in series or parallel with an existing circuit element. Flasck Decl. ¶¶ 51, 52, 56. Indeed, there could be other effects of such resistances and other potential purposes for adding them. Flasck Decl. ¶¶ 51, 52, 56. Defendant's additional words—19 for the first term and 22 for the second—provide no additional clarity and potentially create confusion and additional disputes regarding what is required or permitted by the claim language. There is no need to complicate simple claim phrases with Defendant's baggage. *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction is "not an obligatory exercise in redundancy.").

The Court should reject Defendant's attempt to complicate simple claim phrases (e.g., "limiting resistance element connected in series with the first variable resistance element") with 19 or 22 additional words.

**D. "circuitry operable to determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel" (claims 1-10)**

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Not subject to § 112 ¶ 6, but should the Court interpret this to be subject to § 112 ¶ 6, then the function and corresponding structure would be:<br><br>Function: determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel.<br><br>Structure: (a) simple threshold at the output of the integrator; (b) control unit 20; (c) circuit 32; (d) circuit 33; or (e) circuit 34, and equivalents thereof | Construction: plain and ordinary meaning, which is "**<u>electrical hardware, not software</u>**, to determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel"<br><br>Alternatively: "circuitry" is a nonce word and subject to § 112 ¶ 6.<br><br>Function: determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel.<br><br>Structure: (a) simple threshold on the output of the integrator, (b) control unit 20 performing the algorithm at 5:20-33, (c) control unit 20 performing the algorithm at 6:48-55, or (d) control unit 20 performing the algorithm at 7:30-39 and equivalents thereof |

**E. "wherein the circuitry is operable to determine an amount of force applied to the sensing area using a differential measurement" (351 claim 9)**

| Neodron's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Not subject to § 112 ¶ 6, but should the Court interpret this to be subject to § 112 ¶ 6, then the function and corresponding structure would be:<br><br>Function: determine an amount of force applied to the sensing area using a differential measurement<br><br>Structure: (a) control unit 20; (b) circuit 33; or (c) circuit 34, and equivalents thereof | Construction: plain and ordinary meaning, which is "wherein the **<u>electrical hardware, not software</u>**, to determine an amount of force applied to the sensing area using a differential measurement"<br><br>Alternatively: "circuitry" is a nonce word and subject to § 112 ¶ 6.<br><br>Function: determine an amount of force applied to the sensing area using a differential measurement<br><br>Structure: (a) control unit 20 performing the algorithm at 6:48-55 or (b) control unit 20 performing the algorithm at 7:30-39 and equivalents thereof |

### 1. The term “circuitry” is an ordinary term that requires no construction.

The parties agree that plain and ordinary meaning should apply and that most of the claim phrase needs no construction. Defendant, however, argues that the Court should construe the ordinary word “circuitry” as “electrical hardware, not software.” But claim construction is “not an obligatory exercise in redundancy.” *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Where a term is used in accordance with its plain meaning, courts should not re-characterize it using different language. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (“[T]he court properly instructed the jury that these terms should receive their ordinary meanings.”). Here, person of ordinary skill in the art would be familiar with, and apply the plain and ordinary meaning to, the term “circuitry.” Flasck Decl. ¶ 57. The term requires no construction. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (“[T]he court properly instructed the jury that these terms should receive their ordinary meanings.”).

Defendant’s proposed negative limitation—“not software”—has no support in the intrinsic record. *See Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (“The words of a claim are generally given their ordinary and customary meaning … There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.”). Indeed, Defendant has not and cannot point to any clear and unambiguous disclaimer excluding “software” from the plain word “circuitry.”

Moreover, plain and ordinary meaning of “circuitry” would not be “electrical hardware, not software.” Flasck Decl. ¶ 58. Indeed, many circuits include software, including programmable circuits, such as, e.g., programmable logic devices that can be configured and reconfigured using software programs, or circuits that include embedded software or firmware. *Id.* Accordingly, the Court should reject Defendant’s attempt to import a negative limitation unsupported by the intrinsic record and contrary to the plain and ordinary meaning.

#### 2. The term "circuitry" is not subject to § 112 ¶ 6.

These claim phrases do not use the word "means," creating a presumption that means-plus-function does not apply. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Nor is "circuitry" a "nonce" term that lacks structure. *See id.* at 1350; Flasck Decl. ¶ 59. Indeed, both parties appear to agree that "circuitry" has a plain and ordinary structural meaning.

Moreover, the Federal Circuit previously analyzed the term "circuitry" and concluded it is not a means-plus-function term. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319–21 (Fed. Cir. 2004).[3] In *Linear*, the Federal Circuit reversed a district court's holding that the terms "circuit" or "circuitry" for performing a function were means-plus-function terms. *Id*. The Federal Circuit determined that technical dictionaries, which reflect the understanding of a person of ordinary skill, plainly show that the term "circuitry" connotes structure. *Id.* Thus, when the structure-connoting term "circuitry" is combined with a description of the circuitry's operation, sufficient structural meaning will generally be conveyed to a person of ordinary skill. The Federal Circuit held that because the claims at issue themselves included the "objective or operations" of the circuitry, and because a person of ordinary skill would understand the structural arrangements of circuit components from the term "circuitry" with the qualifying language of the claims, means-plus-function did not apply. *Id.* at 1320–21.

The same analysis applies here. A person of ordinary skill would understand the term "circuitry" connotes the combination of electrical devices and conductors interconnected to form a conducting path, with potential use of embedded software or programmable components. *See* Flasck Decl. ¶ 59. Further, claim 1 of the '351 patent recites the objective and operations of the claimed "circuitry," e.g., "circuitry operable to determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel." Thus, the claim itself provides the specific configurations, objectives, and operations of the claimed "circuitry." A

---

[3] *Linear* remains controlling law because it was decided before *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) and thus applied the same presumption as *Williamson*. *See Williamson*, 792 F.3d at 1349 ("Henceforth, we will apply the presumption as we have done prior to *Lighting World*. . . .").

person of ordinary skill would understand the structural arrangements of the circuitry together with the qualifying language of the claims and understand that "circuitry" connotes sufficient structure. *See* Flasck Decl. ¶ 60. Means-plus-function treatment does not apply.

**3. Even if § 112 ¶ 6 should apply (contrary to fact and law), Defendant's proposed structures are wrong.**

As explained above, means-plus-function treatment does not apply, as "circuitry" connotes structure. But if § 112 ¶ 6 would apply (contrary to fact and law), then the Court should adopt Neodron's proposed structures "(a) simple threshold at the output of the integrator; (b) control unit 20; (c) circuit 32; (d) circuit 33; or (e) circuit 34, and equivalents thereof" as to claim 1 and "(a) control unit 20; (b) circuit 33; or (c) circuit 34, and equivalents thereof" as to claim 9.

The parties agree as to the function ("determine, based on the measured parameter, an amount of force applied to a sensing area of the touch sensing panel" for claim 1, and "determine an amount of force applied to the sensing area using a differential measurement" for claim 9), and Neodron's proposal correctly recites the corresponding structures that perform the function.

For instance, regarding claim 1, the '351 patent recites that "a simple threshold on the output of the integrator perform[s] force measurement." '351 patent at 5:35-37. Moreover, the '351 patent also discloses that "control unit 20," "circuit 32," "circuit 33," and "circuit 34" perform the recited function as well. *See, e.g.,* '351 patent at 4:38-40 ("controller 20 facilitates force sensing by using existing circuitry of the control unit 20"); 4:45-48 ("circuit 32 … includes a resistive force sensitive element"); 5:56-61 ("circuit 33 … includes a QTC resistive force sensitive element"); 6:56-60 ("circuit 34 includes three QTC resistive force sensitive elements"). The function for claim 9 recites "using a differential measurement," which narrows the corresponding structures to (a) control unit 20; (b) circuit 33; or (c) circuit 34, and equivalents thereof. *See, e.g.,* '351 patent at 6:32-39 ("control unit 20 used to measure the integrated current value to carry out differential measurement").

Defendant agrees that a "simple threshold at the output of the integrator" is an example of a corresponding structure, but proposes other structures limited to certain specific "algorithms."

To import such "algorithms," Defendant appears to be arguing that the disclosed structure is general purpose computer, or microprocessor, programmed to carry out an algorithm. *See WMS Gaming, Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1349 (Fed. Cir. 1999). Defendant is incorrect. As explained above, the corresponding structure disclosed in the specification is a simple threshold, a control unit, or a circuit. None of these structures is a general-purpose computer or a microprocessor. *See, e.g., Levine v. Samsung Telecom. Am*., LLC, 2012 WL 383647, *31-*32 (E.D. Tex. Feb. 3, 2012) ("The 'transmitter 10' is not a general purpose computer, so the specification need not disclose any software or algorithms."); *Stanacard, LLC v. Rebtel Networks, AB*, 2010 WL 46006, *15–*17 (S.D.N.Y. Jan. 6, 2010) ("Numerous courts have previously found that in the telecommunications field, a 'module' is not a general purpose computer. Rather, it is a special purpose hardware device or software component, readily identifiable to a skilled artisan, and which can serve as the corresponding structure for a means plus function limitation."); Flasck Decl. ¶ 61. For example, control unit 20 is not a general-purpose computer or merely a microprocessor, but rather a structure that typically includes current integrator circuit, as disclosed in the '351 patent. *See, e.g.,* '351 patent at 4:32-44. Moreover, control unit 20 has specific functionality that is more restrictive than a general-purpose computer. Accordingly, Defendant's proposal to import numerous lines of description from the specification should be rejected.

Dated: October 23, 2020

Respectfully submitted,

*/s/ Reza Mirzaie*

Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Philip X. Wang (CA SBN 262239)
pwang@raklaw.com
C. Jay Chung (CA SBN 252794)
jchung@raklaw.com
Amy E. Hayden (CA SBN 287026)
Email: ahayden@raklaw.com
Kristopher R. Davis (IL SBN 6296190)

Email: kdavis@raklaw.com
Christian W. Conkle (CA SBN 306374)
Email: cconkle@raklaw.com
Kent N. Shum (CA SBN 259189)
Email: kshum@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Fax: (310) 826-6991

Matthew D. Aichele (VA SBN 77821)
Email: maichele@raklaw.com
**RUSS AUGUST & KABAT**
800 Maine Avenue, SW, Suite 200
Washington, DC 20024
Phone: (310) 826-7474
Fax: (310) 826-6991

***Attorneys for Plaintiff Neodron Ltd.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 23, 2020, the foregoing document was served electronically to all counsel of record.

*/s/ Reza Mirzaie*________
Reza Mirzaie