# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| NEODRON LTD.,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC.,<br><br>Defendant. | Case No. 1:19-cv-00819-ADA |
| NEODRON LTD.,<br><br>Plaintiff,<br><br>v.<br><br>HP, INC.,<br><br>Defendant. | Case No. 1:19-cv-00873-ADA |
| NEODRON LTD.,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 1:19-cv-00874-ADA |
| NEODRON LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 1:19-cv-00898-ADA |

NEODRON LTD.,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

Defendant.

Case No. 1:19-cv-00903-ADA

**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF ON THE DISPUTED TERMS OF THE TOUCH SENSOR PATENTS**

**(U.S. PATENT NOS. 8,946,574; 9,086,770; 9,823,784; 10,088,960; and 7,821,502)**

# TABLE OF CONTENTS

**Page**

I. THE DISPUTED TERMS OF U.S. PATENT NO. 9,823,784 .......................................1

A. "wherein the plurality of drive electrodes are substantially area filling within the sensing region relative to the plurality of sense electrodes" (claims 1-3). .......................................1

1. Neodron's "Absolute" Limitation Contradicts the Claims and File History. .......................................2

2. Neodron's Intrinsic Citations Confirm the Lack of Guidance for the Meaning of the Term as Written. .......................................5

3. There is No Genuine Factual Dispute between the Experts. .....................7

B. "together, the plurality of sense electrodes and the plurality of isolated conductive elements are substantially area filling within the sensing region relative to the plurality of sense electrodes" (claims 1-3). .......................................8

II. THE DISPUTED TERMS OF U.S. PATENT NO. 7,821,502 .......................................10

A. "a substrate having a surface with an arrangement of electrodes mounted thereon" (claims 1-2, 5-8, 11-14, 16). .......................................10

B. "sensing area" (claims 1-2, 5-8, 11-14, 16). .......................................16

C. "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" (claims 1-2, 5-8, 11-14, 16). .......................................19



WEST\290588567.4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brazabra Corp. v. CE Soir Lingerie Co., Inc.*,
No. 1-18-cv-00683, Dkt. No. 35 (W.D. Tex. Aug. 15, 2019) ....................6

*Kaneka Corp. v. Xiamen Kingdomway Group Co.*,
790 F.3d 1298 (Fed. Cir. 2015)....................12

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
No. 2019-1557, slip op. (Fed. Cir. May 20, 2020)....................12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ....................1

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008)....................11, 16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................12, 13

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)....................20

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 747 (Fed. Cir. 2016)....................12, 13

*Thorner v. Sony Computer Entertainment Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................11, 22

*Versata Software, Inc. v. Zoho Corp.*,
213 F. Supp. 3d 829 (W.D. Tex. 2016) ....................6

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................21

**Other Authorities**

37 C.F.R. § 1.83....................21

Defendants respectfully submit their reply claim construction brief for the remaining disputed terms of U.S. Patent Nos. 9,823,784 and 7,821,502 (collectively the "touch sensor patents").[1]

## I. THE DISPUTED TERMS OF U.S. PATENT NO. 9,823,784

Neodron does nothing to address the fundamental problem of its indefinite claims: it is impossible to know what infringes the '784 patent based upon the claim language, the specification, or the file history. This is why the law requiring definiteness exists. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-11 (2014). The '784 patent claims are invalid, because they are indefinite.

### A. "wherein the plurality of drive electrodes are substantially area filling within the sensing region relative to the plurality of sense electrodes" (claims 1-3).

| Defendants' Construction | Neodron's Construction |
|---|---|
| Indefinite | Plain and ordinary meaning; no construction necessary |

Neodron's responsive brief obfuscates the issue. The issue is not whether "substantial" or "substantially area filling" is indefinite. Neodron Resp. Br. at 28-29. Nor is the issue whether "relative to" is indefinite. *Id.* at 29. The issue is whether the actual requirement stated in the claims—that the drive electrodes be "substantially area filling within the sensing region ***relative to*** the plurality of sense electrodes"—is indefinite. Defendants' Op. Br. at 11. That full language is indefinite because it is subject to several different possible meanings, with no resolution possible from the specification or prosecution history. Does the limitation (1) ***raise*** the threshold (*e.g.*, "drive electrodes" must be both substantially area filling ***and*** more area

[1] The parties have reached agreement on the previously disputed terms in the 8,946,574 and 10,088,960 patents and, therefore, those patents are not addressed is this reply brief.



WEST\290588567.4

filling than the sense electrodes), (2) ***lower*** the threshold (*e.g.*, "drive electrodes" must be substantially area filling compared to the sense electrodes, regardless of whether they are area filling on their own), or (3) mean something else entirely?

Neodron asserts that the first option is appropriate, then strains to eliminate any other possibility in order to rescue the claims. Neodron Resp. Br. at 30, 33. But Neodron's arguments fail. Neodron's entire opposition hinges on reading an "absolute" limitation into claims 1-3 (*i.e.*, the drive electrodes must be substantially area filling in an absolute sense, not just "relative to" the sense electrodes). This effort only highlights what is missing from the claims. In fact, the prosecution history shows that the Patentee knew exactly how to claim such an "absolute" requirement, but opted not to do so. Neodron's concessions about the limited disclosure in the specification confirm there is no guidance for the meaning of the full term as written.

**1. Neodron's "Absolute" Limitation Contradicts the Claims and File History.**

Neodron argues claims 1-3 should be redrafted to include a distinct "absolute limitation" and a distinct "relative limitation." Neodron Resp. Br. at 28. The "absolute limitation" would require that the drive electrodes be "substantially area filling" on their own—***without*** a relative comparison with the sense electrodes. *Id.* at 30; *see also id.* at 33 (arguing "the specification explains the benefit of drive electrodes" that "'cover the first layer' almost 'entirely'"). The "relative limitation" would then require a separate comparison of the two, in which the drive electrodes are more area filling than the sense electrodes. *Id.* at 29. Neodron's effort would rewrite the claim by eliminating the "relative to" qualifier from the "substantially area filling" limitation ("wherein the plurality of drive electrodes are substantially area filling within the sensing region ~~**relative to the plurality of sense electrodes**~~").

Neodron's effort to fix the claims by rewriting them contradicts the prosecution history.



WEST\290588567.4

Neodron emphasizes that this very phrase was part of the "original" claims filed in 2009. *Id.* at 28. The Patentee proposed this language for claim 1: "wherein the drive electrodes substantially entirely cover the first layer." Defendants' Op. Br., Ex. A, 4/10/2009 U.S. Pat. App. No. 12/421,705 at 39 (Claim 1). What Neodron fails to mention is that the Patentee ***removed*** this clause from the claims. The limitation was rejected as anticipated by the prior art. Supplemental Declaration of John Guaragna, Ex. O, 6/6/2011 Rejection at 2-3 ("Hotelling teaches a capacitive touch sensor . . . wherein the drive electrodes ***substantially entirely cover the first layer*** with individual ones of the drive electrodes being separated from neighboring drive electrodes by small gaps[.]") (emphasis added). In response, the Patentee removed it entirely:

> **In the Claims**
>
> 1. (Currently Amended) A ~~capacitive touch~~ sensor comprising:
>
> a substrate; and
>
> a sensing region configured to sense a position of an object within the sensing region, the sensing region comprising ~~touch sensitive panel having~~ a plurality of drive electrodes ~~arranged~~ disposed on ~~one~~ a first side of a substrate in a first layer and a plurality of sense electrodes ~~arranged~~ disposed on ~~the other~~ a second side of the substrate in a second layer so that the sense electrodes ~~cross~~ intersect the drive electrodes at a plurality of intersections offset ~~from each other~~ by ~~the~~ a thickness of the substrate, ~~wherein the~~ each drive ~~electrodes substantially entirely cover the first layer with individual ones of the drive electrodes being separated from neighboring~~ electrode coupled to an adjacent drive ~~electrodes by small gaps~~ electrode through a resistive element.

Defendants' Op. Br., Ex. B, 10/6/2011 Amendment at 2. Struggling to overcome Hotelling, the Patentee introduced a new phrase requiring that the drive electrodes be substantially area filling "relative to" the sense electrodes:

> a plurality of sense electrodes disposed on a second side of the substrate in a second layer so that the sense electrodes intersect the drive electrodes at a plurality of intersections offset by a thickness of the substrate, ~~each drive electrode coupled to an adjacent drive electrode through a resistive element~~ **wherein the plurality of drive electrodes are substantially area filling within the sensing region relative to the plurality of sense electrodes**.



WEST\290588567.4

*Id.*, Ex. C, 5/16/2012 Amendment at 2.

The prosecution history leaves no doubt. The Patentee knew exactly how to claim drive electrodes that "substantially entirely cover the first layer." But that limitation was stricken and replaced with a relative—***not absolute***—term. This change left the claims untethered to the specification's disclosures of "substantiality," which examined the drive electrodes "in the first layer" without regard to the sense electrodes in the second layer. Now, Neodron strains to reclaim the deleted limitation to save the indefinite claims it actually received.

Neodron attempts to excuse reading in an absolute limitation by citing the alleged benefits of the limitation. The plain language of the claims and the patent's prosecution history show that the Patentee did not write these claims to accomplish these alleged benefits. And without the limitation in the actual claims, its benefits are irrelevant.

First, Neodron insists the "drive electrodes are separated from each other ***only by small gaps***." Neodron Resp. Br. at 25 (emphasis added). But the claims do not say that. As before, the Patentee knew how to specify "gap size." It did so in the original claims filed in 2009: "wherein the drive electrodes substantially entirely cover the first layer with individual ones of the drive electrodes being separated from neighboring drive electrodes ***by small gaps***." Defendants' Op. Br., Ex. A, 4/10/2009 Application at 39 (Claim 1) (emphasis added). On October 6, 2011, however, the Patentee struck that language. *Id.*, Ex. B, 10/6/2011 Amendment at 2.

Next, Neodron insists the claims have a visual requirement. Neodron Resp. Br. at 30-31. But the claims do not say that either. Claims 1-3 concern an electrode "area." They do not recite a requirement for electrode visibility to the human eye such as an "invisible" or "almost invisible" electrode pattern. *Id.* at 30. Had the Patentee wanted to limit the claim to meet any

Case 1:19-cv-02128-ADA Document 72 Filed 10/25/20 Page 9 of 33

specific visual requirements, it could have done so. In fact, once again, the file history shows the Patentee knew precisely how to claim that characteristic. *See* Defendants' Op. Br., Ex. A, 4/10/2009 Application at 39 (Claim 4) ("The capacitive touch sensor of claim l, wherein the small gaps are dimensioned to be sufficiently small ***to be invisible or almost invisible***.") (emphasis added). On October 6, 2011, the Patentee struck that language, too. *Id.*, Ex. B, 10/6/2011 Amendment at 2.

Finally, Neodron tries to read a "noise" prevention requirement into the claims. Neodron contends the claim must require "filling the entire area" because it "provides an electrical shielding effect, cutting down noise emanating from below the touch sensor" from a "screen" or "display," or "LCD" module. Neodron Resp. Br. at 30-31 (citing '784 patent at 8:4-9). For a third time, Neodron inserts requirements that are found nowhere in the claim. Neodron also reads in hardware. For instance, claim 1 is directed to a "sensor." '784 patent at 19:49. No claim recites a "screen" or "display module." Again, the Patentee knew how to claim "display" hardware when desired—original claim 11 recited: "The capacitive touch sensor of claim l, further comprising ***a display module arranged below the first layer***." Defendants' Op. Br., Ex. A, 4/10/2009 Application at 40 (Claim 11) (emphasis added). On October 6, 2011, the Patentee canceled that entire claim. *Id.*, Ex. B, 10/6/2011 Amendment at 3.

### 2. Neodron's Intrinsic Citations Confirm the Lack of Guidance for the Meaning of the Term as Written.

Unable to rewrite the claim as more definite, *i.e.*, as requiring drive electrodes that "substantially entirely" fill the sensing region on their own, Neodron's remaining argument only confirms there is inadequate guidance in the specification for the actual term in claims 1-3. Neodron concedes that the claim "requires a comparison; in this context, a comparison ***between the drive electrodes and the sense electrodes***." Neodron Resp. Br. at 29 (emphasis added). Yet

none of Neodron's citations set out a definition for how that comparison is made. As underscored in Defendants' Opening Brief, neither the phrase "area filling . . . relative to" nor the phrase "relative to the sense electrodes" appears in the specification. Defendants' Op. Br. at 12. Neodron has no response.

Instead, Neodron concedes that the "preferred embodiment[s]" cited in its brief only depict drive electrodes that essentially fill the "entire" first layer. Neodron Resp. Br. at 33. These do not shed light on the scope of the actual term, which requires drive electrodes that are "substantially area filling . . . relative to" the sense electrodes. As discussed, the drive electrodes need not necessarily cover the "entire" first layer in order to meet the claims—for example, nothing forecloses patterns in which the drive electrodes fill less of the total area but still fill much more area than the sense electrodes. And even if one were to accept Neodron's position that these citations are relevant to the term, these preferred embodiments would only describe an upper boundary. They are not definitional. The specification still fails to define the lower boundary of the claim. There is no example in the specification of an electrode pattern that fails to meet the term. *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 836 (W.D. Tex. 2016) (term indefinite where patent "provide[d] examples of when something constitutes a space-constrained display" but failed to articulate "when something is not a space-constrained display"); *Brazabra Corp. v. CE Soir Lingerie Co., Inc.*, No. 1-18-cv-00683, Dkt. No. 35 at 10 (W.D. Tex. Aug. 15, 2019) (term indefinite where patent had "examples of what may be 'substantial' coverage" but did "not otherwise provide any examples of when the adhesive fails to cover 'a substantial area'").

Likewise, the examples in Figures 2A, 7B, 8A, and 13 are just particular embodiments. They do not explain what types of patterns would ***not*** meet the claims, or provide

any explanation of how to evaluate whether a pattern that does not look like those embodiments (almost entirely filled or flooded with drive electrodes) is or is not "substantially area filling within the sensing region relative to the plurality of sense electrodes." Therefore, a POSITA is left without any meaningful guidance as to the requirements of this limitation.[2]

### 3. There is No Genuine Factual Dispute between the Experts.

Mr. Flasck's entire declaration rests on the faulty assumption that claims 1-3 must include Neodron's purported "absolute" limitation. *See, e.g.*, Flasck Resp. Decl. ¶ 20. Because that position contradicts the intrinsic record, Mr. Flasck's statements that these vague claims are concrete and limited to this absolute requirement are unsupported and unhelpful. *See id.* ¶ 21; ¶ 26 (inserting requirement that "drive electrodes are, ***considered on their own***, substantially area filling within the sensing region") (emphasis added); ¶ 22 (opining unclaimed benefits dropped during prosecution make claims definite).

Like Neodron, Mr. Flasck does not contest the fact that, if the claims do not contain this "absolute" limitation, claims 1-3 are indefinite. If the claims encompass a lower threshold (*e.g.*, drive electrodes need only be substantially area filling in comparison to the "sense electrodes" in Layer 2 regardless of whether drive electrodes entirely fill Layer 1), Mr. Flasck is unable to contest that there is no guidance in the intrinsic record for how to determine whether the limitation is satisfied. A POSITA would have to determine whether, for instance, an electrode pattern with 40% of the area filled by drive electrodes is substantially area filling relative to sense electrodes filling 10%, without any guidance in the specification or file history. Mr. Flasck

---

[2] Neodron also points out that these figures show sense electrodes that are narrow. Neodron Resp. Br. at 25 (stating "the sense electrodes 804 on Layer 2 do not substantially fill the space"). A requirement for narrow sense electrodes does not inform one about how much more area the *"drive electrodes"* must fill to be "substantially area filling . . . relative to the sense electrodes."

does not opine that a POSITA could—without reading in an absolute limitation—be reasonably certain about the claim scope.

By contrast, Defendants' expert, Dr. Silzars, did opine on the issue and the actual claim language, explaining why one of ordinary skill would lack reasonable certainty. Neodron misses the point when asserting that "Dr. Silzars refuses to say that the hypothetical 40% area filling drive electrodes would be 'substantially area filling . . . relative to' the 10% area filling sense electrodes." Neodron Resp. Brief at 32. Dr. Silzars's point is that it is impossible for a POSITA to determine whether a solution with 40% area filling drive electrodes would be "substantially area filling . . . relative to" 10% area filling sense electrodes in view of the claim language as it is written:

> [I]f the drive electrodes occupied 40% of the area of the sensing region and the sense electrodes occupied 10% of the sensing region, the drive electrodes would not seem to be "substantially area filling," but they would be more area filling than the sense electrodes. It is unclear whether they would be "much" more area filling than the sense electrodes.

Silzars Decl. ¶ 90.

Because there is no "absolute" limitation, it is not enough for a POSITA to determine whether the drive electrodes are, on their own, "substantially area filling." A POSITA must be able to determine whether drive electrodes are substantially area filling "relative to" the sense electrodes. And there is an undisputed lack of guidance in the specification for when that term is met. Consequently, claims 1-3 are indefinite.

### B. "together, the plurality of sense electrodes and the plurality of isolated conductive elements are substantially area filling within the sensing region relative to the plurality of sense electrodes" (claims 1-3).

| Defendants' Construction | Neodron's Construction |
|---|---|
| Indefinite | Plain and ordinary meaning; no construction necessary |

The flaws in Neodron's position are reinforced by its arguments for the second term.

Once again, Neodron insists this second term includes an "absolute" limitation. *See* Neodron Resp. Br. at 34-35. In Neodron's view, the plain language requires "the sense electrodes and isolated elements 'together . . . are substantially area filling within the sensing region,' ***without reference to*** the sense electrodes alone." *Id.* (emphasis added). The claims say the opposite: "the plurality of sense electrodes and the plurality of isolated conductive elements are substantially area filling within the sensing region ***relative to the plurality of sense electrodes***." '784 patent at 20:8-11 (emphasis added). The claim phrase "relative to" the sense electrodes cannot mean "without reference to" those electrodes. For this reason alone, Neodron's argument should be rejected.

As with the first term, the file history contradicts Neodron's argument. Neodron argues the term's meaning is "concrete" because "the sense electrodes and the isolated elements together substantially entirely cover the second layer." Neodron Resp. Br. at 34-35 (quoting '784 patent at 5:4-11). But that section of the specification relates to the original claim language, which recited that the "sense electrodes and the isolated elements together substantially entirely cover the second layer." Defendants' Op. Br., Ex. A, 4/10/2009 U.S. Pat. Application No. 12/421,705 at 40 (Claim 9). That language was ***stricken*** from the claims (*id.*, Ex. B, 10/6/2011 Amendment at 3 (striking "entirely"); *id.*, Ex. C, 5/16/2012 Amendment at 3 (striking "cover the second layer")), and then the indefinite "substantially area filling . . . relative to" phrase was added (*id.*). Defendants pointed to this intrinsic evidence illustrating the broadened scope of the term in their opening brief (Defendants' Op. Br. at 17), but Neodron has no response.

Given that there is no support for an absolute limitation to rescue the claims, a POSITA is tasked with trying to understand what the relative comparison here requires. As Dr. Silzars opined, "as the sense electrodes become thinner, a Person of Ordinary Skill is confronted with



WEST\290588567.4

the question: how much more area must be filled by 'isolated conductive elements' to maintain the standard of 'substantially area filling?'" Silzars Decl., ¶ 95. Mr. Flasck does not dispute Dr. Silzars's statement that to a POSITA the "specification and prosecution history offer no clarity as to how to answer this question." *Id.* Mr. Flasck's opinion rests on an absolute limitation that does not exist. When the combination fills less than the entire area but still a considerable amount—*e.g.*, 60%, 70%, or 80% compared to the sense electrodes alone filling 20%—he offers no evidence for how a POSITA could know whether that combination meets the term. Likewise, Neodron's intrinsic evidence only illustrates that particular embodiments fill the space entirely with a combination of the sense electrodes and isolated conductive elements. This does not provide clarity or boundaries as to what it means for that combination to be substantially area filling "relative to" the sense electrodes alone. *See* Fig. 8A.

Because the claims do not recite an "absolute" limitation and could encompass other types of patterns that fill less than the entire second layer, a POSITA is left without enough guidance in the intrinsic record of the '784 patent to know when the claim is met.

## II. THE DISPUTED TERMS OF U.S. PATENT NO. 7,821,502

Three claim terms remain in dispute for the '502 patent.

### A. "a substrate having a surface with an arrangement of electrodes mounted thereon" (claims 1-2, 5-8, 11-14, 16).

| Defendants' Construction | Neodron's Construction |
|---|---|
| Plain and ordinary meaning in light of the specification, *i.e.* "a substrate having a <u>side</u> with an arrangement of electrodes mounted thereon"[3] | Plain and ordinary meaning; no construction necessary: "a substrate having a <u>surface</u> with an arrangement of electrodes mounted thereon" |

Despite an obvious dispute about the scope and meaning of this phrase, Neodron

---

[3] Neodron's briefs omit the "plain and ordinary meaning" portion of Defendants' construction.



WEST\290588567.4

continues to insist that "surface" need not be construed. Neodron seeks to leave the term open-ended. To support its flawed position, Neodron cites *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012), which does not apply here. In *Thorner*, the disputed term "attached" had only one plain and ordinary meaning, and the issue was whether "attached" should be limited to "affixed to an exterior surface." *Id.* at 1367 ("The plain meaning of the term 'attached' encompasses either an external or an internal attachment."). Here, "surface" has multiple plain and ordinary meanings, and Neodron does not dispute that "side" is one of them. Nor can it, because Defendants' construction is entirely consistent with the "any face" definition from Webster's Unabridged Dictionary, and—most importantly—is consistent with the specification of the '502 patent. *See* Suppl. Guaragna Decl., Corrected Ex. G ("any face of a body or thing; *the six surfaces of a cube*"); *see also* '502 patent at Abstract, 1:34-37, 2:21-25, 3:1-7. Thus, even if Neodron were correct that another plain and ordinary meaning of "surface" is the outside part or exterior of an object, the Court still would need to resolve the dispute about claim scope between "side" and "entire exterior." The reasoning of *Thorner* therefore does not apply. Rather, when a court is faced with a claim term having multiple plain and ordinary meanings, the court should construe the term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

Neodron argues that the meaning of "surface" must be its cited dictionary definitions in the absence of disclaimer or lexicography. Neodron Resp. Br. at 3. The Federal Circuit has repeatedly rejected Neodron's position, holding it is improper to "limit the role of the

specification in a claim construction to serving as a check on the dictionary meaning of a claim term if the specification requires the court to conclude that fewer than all the dictionary definitions apply, or if the specification contains a sufficiently specific alternative definition or disavowal." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (emphasis added); *see also Kaneka Corp. v. Xiamen Kingdomway Group Co.*, 790 F.3d 1298, 1304-05 (Fed. Cir. 2015) (recognizing that "sealed" may have more than one plain and ordinary meaning and rejecting dictionary definition even though "the specification does not specifically define the term 'sealed'"); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 752 (Fed. Cir. 2016) ("The fact that 'around' has multiple dictionary meanings does not mean that all of these meanings are reasonable interpretations in light of this specification.").

The present case falls squarely in the *Phillips-Kaneka-PPC Broadband* line of cases. A court construing a claim term like "surface" that is alleged to have multiple plain and ordinary meanings must reject any dictionary definition that is inconsistent with the intrinsic evidence. *Kaneka*, 790 F.3d at 1304-05 (rejecting dictionary definition of "sealed" as inconsistent with specification); *PPC Broadband*, 815 F.3d at 752-53 (Fed. Cir. 2016) (rejecting dictionary definition of "around" as inconsistent with the specification); *see also McRO, Inc. v. Bandai Namco Games Am., Inc.*, No. 2019-1557, slip op. at 13 (Fed. Cir. May 20, 2020) (rejecting textbook definition of "vector" as inconsistent with specification). Here, Neodron's dictionary definitions are inconsistent with the specification. The '502 patent specification's repeated use of phrases like "the opposing surface," "an upper surface" and "an opposing lower surface" would make no sense if a substrate—such as a solid piece of glass or plastic—had only a single exterior "surface." *See, e.g.*, '502 patent at Abstract, 1:34-37, 2:21-25, 3:1-7; *see also* Defendants' Op. Br., Exs. E, F (similar usages in file history). Neodron's dictionary definitions

also are inconsistent with the purported advantages of the claimed invention over the prior art: "Because the position sensor is based on sensing electrodes on only a single surface, it can be cheaper to manufacture than known double-sided position sensors." '502 patent at 3:1-3 (emphasis added). If "surface" meant the entire exterior of a substrate, as Neodron now contends, the applicants would have had no basis or reason to distinguish "known double-sided position sensors" from their purported invention.

Tellingly, Neodron's response brief ignores the patent specification and makes no attempt to demonstrate any error in Defendants' analysis. Neodron therefore tacitly concedes that its dictionary definitions are inconsistent with the specification. Instead, Neodron mischaracterizes Defendants' construction, incorrectly suggesting it relies on "some disclaimer or lexicography" that deviates from plain and ordinary meaning. Neodron Resp. at 3. As detailed above, however, Defendants' construction relies on numerous disclosures and examples in the specification of the '502 patent that inform the plain and ordinary meaning of the term. Accordingly, Defendants' construction is consistent with the approach the Federal Circuit mandated in *Phillips*. In contrast, Neodron's construction ignores the specification and "improperly restricts the role of the specification in claim construction"—the very approach the Federal Circuit rejected in *Phillips*. *Phillips*, 415 F.3d at 1320-21. Under the *Phillips-Kaneka-PPC Broadband* line of cases, the Court should reject Neodron's contrary dictionary definitions.

The remaining arguments in Neodron's response brief are equally flawed. Neodron argues that "surface" needs no construction because it "is not a difficult technical term for which a construction would help the jury understand the true meaning of it." Neodron Resp. Br. at 1. This argument is contrary to the *Kaneda* and *PPC Broadband* decisions, which involved non-technical terms "sealed" and "around" and rejected dictionary definitions inconsistent with the

specification like the ones Neodron offers here. Likewise, Neodron's argument that "a construction would not necessarily add to the jury's understanding of the terms" is not credible in light of the parties' clear disagreement about the proper scope of the claim term "surface."

Neodron next attacks a straw man by purporting to quote a nonexistent portion of Defendants' opening brief. Neodron claims that Defendants' construction would "require 'a substrate *having one and only one side* with an arrangement of electrodes mounted thereon … .'" Neodron Resp. Br. at 2 (purportedly citing "Defs.' Opening Br. at 25-26"; italics and red font added by Neodron). The words "one and only one side" appear in quotations three times on page two of Neodron's response brief, but those five words appear nowhere in Defendants' briefing or their construction. Indeed, nothing in Defendants' construction limits claim 1 to "a substrate having one and only one side with an arrangement of electrodes mounted thereon." Rather, Defendants' construction simply requires that at least one side of the substrate must have the claimed arrangement of row and column sensing electrodes. Nothing in Defendants' construction prohibits other sides of the substrate from also having an arrangement of electrodes, whether it be the claimed arrangement or some other arrangement. Neodron's suggestion to the contrary is false.

Neodron also claims that Defendants' construction of "surface" as a "side" violates the presumption that "a" or "an" means "one or more." *Id.* This is a red herring. As demonstrated above, Defendants' construction does not preclude a substrate with more than one "surface" (*i.e.*, side) having the claimed arrangement of electrodes. On the contrary, Neodron's construction would violate this presumption, because construing "surface" to mean the entire exterior of a substrate would preclude the existence of multiple surfaces.

Moreover, Neodron's assertion that a surface means the entire outside part or the entire

exterior renders the term "surface" superfluous. Under Neodron's dictionary definitions, there would be no difference in meaning if "having a surface" were deleted from the limitation "a substrate ~~having a surface~~ with an arrangement of electrodes mounted thereon." As Neodron's responsive brief repeatedly asserts, a construction that renders a term superfluous is strongly disfavored. Neodron Resp. Br. at 6, 7 and 9.

In another straw man argument, Neodron claims Defendants' construction is inconsistent with a statement in the Background section (at 2:34-44) that "having one sensing layer <u>or side</u> is merely 'optional'[]." Neodron Resp. Br. at 3 (emphasis added). However, the specification does not say that "having one sensing layer <u>or side</u> is merely 'optional'." On the contrary, the specification discloses that the "ideal touch surface" would, among other things, "<u>optionally require only one sensing layer</u> with no crossovers in the sensing region …," with no mention of the word "side" at all. '502 patent, 2:34-44 (emphasis added). Nothing in Defendants' construction precludes a side of the substrate having the claimed arrangement of electrodes in multiple <u>layers</u>, so the statement in the Background section—when correctly quoted—is entirely consistent with Defendants' construction.

Finally, Neodron again claims that Defendants' construction would "risk confusion." Neodron Resp. Br. at 3. But in fact, Neodron's proposed construction would intentionally create confusion. As Neodron concedes, the claims "repeatedly use the phrase 'outside' in a manner that is not synonymous with surface." *Id.* at 4. Therefore, Neodron's attempt to conflate "surface" with the "outside" of an object (or avoid construction altogether) would create confusion, whereas Defendants' construction that a "surface" is a "side" in the context of the '502 patent would avoid confusion.

Neodron seeks to avoid a construction of this term, but it is clear from the briefs that a

dispute exists regarding the scope of this claim language that must be decided. *See O2 Micro*, 521 F.3d at 1361. Defendants' proposed construction is the only one consistent with the intrinsic evidence and should be adopted.

**B. "sensing area" (claims 1-2, 5-8, 11-14, 16).**

| Defendants' Construction | Neodron's Construction |
|---|---|
| "an area defined by the sensing electrodes" | "an area defined by the sensing cells" |

Neodron again tries to avoid addressing the actual dispute related to this claim language, which is whether the "sensing area" is bounded by the sensing electrodes (Defendants' construction), or whether the "sensing area" extends beyond the sensing electrodes by some undefined and unspecified distance (Neodron's position). The fallacy of Neodron's position is apparent in the language of claims 1, which recites that "the electrodes define an array of sensing cells arranged in columns and rows to form a capacitive sensing area" (emphasis added). It is baffling that Neodron can contend that "sensing area" is "an area defined by the sensing cells," yet still contend that the sensing area can extend beyond the outer edges of the electrodes. If, as the claim requires, the claimed electrodes define "an array of sensing cells" (*i.e.*, A=B), and because Neodron's construction requires that the sensing cells define the sensing area (*i.e.*, B=C), then the electrodes must define the claimed "sensing area" (*i.e.*, A=C). Neodron apparently agrees that A equals B and B equals C, but in arguing that the sensing area extends beyond the electrodes, argues that A somehow does not equal C. Neodron's argument violates both logic and the claim language.

Although Neodron tries to obscure its true intentions, Neodron's responsive brief gives away what it will argue to the jury if given the opportunity. Neodron argues that "due to the claimed relationship between sensing cells including at least one row sensing electrode and one column sensing electrode, some passages and embodiments in the patent teach that a sensing

area *may* be defined by the electrodes, if those electrodes are commensurate with the sensing cells." Neodron Resp. Br. at 7 (emphasis added).[4] In other words, Neodron intends to argue that only some sensing cells are defined by the sensing electrodes, while others are not. Whether Neodron's argument is due to a flawed understanding of "defined" or "sensing cells" is unclear, but as demonstrated below, its argument has no support in the intrinsic record.

There are multiple flaws with Neodron's argument. For starters, Neodron ignores that claim 1 requires the sensing electrodes to "define" the array of sensing cells, not that the electrodes potentially or possibly define the sensing cells. "Define" means "to determine or fix the boundaries or extent of: *to define property with stakes*." Ex. N. Consistent with the claim language, every illustration of a sensing cell in the patent has boundaries that correspond to the outer edges of the electrodes in that cell. *See* Fig. 3, sensing cell 28; Fig. 8, sensing cells 84, 86. As previously addressed by Defendants, Neodron's argument that the "sensing electrodes do not have to run to the 'very edge' of the sensing area" (Neodron Resp. Br. at 6) is wrong because the cited passage discloses replacing column electrode spines at the very edge of the sending area with elongated row electrodes. '502 patent at 7:3-10; *see also* Defendants' Resp. Br. at 18-19. Likewise, Neodron's citation to column 10, line 67 through column 11, line 5 (Neodron Resp. Br. at 5-6) fails to support its "beyond the boundary" construction, because the sensing cell 86 of Figure 8 referenced there is a square with all four sides drawn along an outer edge of one of the electrodes in that sensing cell. Finally, Neodron's argument ignores the clear statement in the patent that "sensing electrodes 26 define a sensing area." '502 patent at 5:44-45. Simply put, nothing in the intrinsic evidence supports Neodron's argument that the sensing area can extend

---

[4] Neither the claims nor the specification say anything about a sensing cell including "at least one" row electrode.

beyond the outer edges of the electrodes.

The import of Neodron's further argument that sensing cells result from the intersection of row and column sensing electrodes (Neodron Resp. Br. at 5) is not clear. But even assuming that the row and column electrodes did intersect, the intersection would result in precisely the same sensing cells illustrated in Figures 3 and 8, with the boundaries of those sensing cells being defined by the outer edges of the intersecting electrodes.

Neodron's argument that Defendants' construction renders the claim language "sensing cells" superfluous (Resp. Br. at 6) also is wrong. That language is the predicate for the "each sensing cell including . . . " and multiple "sensing cells" limitations that appear later in claim 1. '502 patent at 12:15-26.

If Neodron's proposal that sensing areas can extend beyond the sensing electrodes (rather than being "defined" by them) were adopted, the jury would be unable to determine how far beyond the sensing electrodes the sensing area extends. Infringement and invalidity may turn on where the boundary of the sensing area is defined, but nothing in the claims or the specification provides any guidance about how far beyond the electrodes a sensing area might extend. The reason for this lack of guidance is simple—the sensing areas disclosed in the '502 patent are always defined by the electrodes and do not extend beyond them. If Neodron prevails in ignoring this clear guidance in the specification, jurors will have no basis to determine whether connections disclosed in prior art references such as Barkan, or in the accused products "are connections made outside the sensing area." Indeed, Neodron has offered no response to Defendants' arguments detailing the numerous and inconsistent boundaries that Neodron could apply to define the sensing areas of Barkan and the '502 patent, which feature nearly identical wrap-around connections. *See, e.g.*, Def. Resp. Br. at 21-24. The failure to do so exposes the

impermissibly indefinite nature of Neodron's construction, which is divorced from any support in the specification.

Simply put, Neodron cannot point to any disclosure in the patent about where one of ordinary skill in the art would draw the boundary of a sensing area that extends some undefined distance beyond the electrodes, because there is no such disclosure. Neodron's desire for a malleable construction that it can twist one way for infringement and another way for validity is all the more reason to reject it. Defendants' construction, on the other hand, is true to the claim language and the specification and should be adopted.

### C. "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" (claims 1-2, 5-8, 11-14, 16).

| Defendants' Construction | Neodron's Construction |
|---|---|
| Plain and ordinary meaning, *i.e.*, "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective row wrap-around connections made outside of the sensing area" | Plain and ordinary meaning, which is "wherein row sensing electrodes of sensing cells at opposing ends of at least one of the rows are electrically coupled to one another by respective connections that wrap around and are made outside of the sensing area" |

As Neodron acknowledges (Neodron Resp. Br. at 9), the parties' dispute has been crystallized—Neodron's proposed construction would require the "row wrap-around connections" to wrap around the entire sensing area, while Defendants' construction requires that they wrap around the other electrodes in a row. Defendants' construction relies on the plain meaning of the claim language, while Neodron proposed construction rearranges the claim language to create a new limitation that does not exist, renders other limitations of claim 1 superfluous, and is not supported by the prosecution history Neodron cites.

Neodron wrongly claims that Defendants' construction—which consists of the words chosen by the patentee—fails to give the term "wrap-around connection" any meaning and

renders it superfluous. Neodron Resp. Br. at 8-9. On the contrary, the claim recites "row wrap-around connections," which requires a connection that wraps around the other electrodes in the row (*i.e.*, the electrodes other than the two electrodes connected via the wrap-around connection). Def. Op. Br. at 33; Def. Resp. Br. at 25. Put simply, a "row wrap-around connection" is a connection that wraps around a row, not a sensing area. Neodron's principal argument therefore fails. In contrast, Neodron's construction (requiring a row wrap-around connection to wrap around the entire sensing area) would render the limitation "made outside of the sensing area" superfluous, because a connection that wraps around the entire sensing area is necessarily "made outside of the sensing area." Def. Resp. Br. at 25-26. Neodron itself contends that a superfluous construction "alone is sufficient to resolve the dispute" (Neodron Resp. Br. at 9, citing *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004)), so the Court should reject Neodron's proposal to read out the "made outside the sensing area" limitation of claim 1.

Neodron argues that its construction is the only one that is consistent with the intrinsic record. Neodron Resp. Br. at 10-12. But for multiple reasons, Neodron's construction is contradicted by the claim language and some parts of the intrinsic record, and the remaining parts of the intrinsic record Neodron cites are at best ambiguous. In contrast, Defendants' construction is consistent with the entire specification and prosecution history, as demonstrated in Defendants' prior briefs.

First, claim 1 recites "row wrap-around connections," not "sensing area wrap-around connections." Neodron's proposed construction is therefore inconsistent with the claim language, while Defendants' construction is faithful to it.

Second, Neodron cites Figure 3, but every wrap-around connection in Figure 3 wraps



WEST\290588567.4

around other electrodes in a respective row or column. Figure 3 therefore supports Defendants' construction.

Third, Neodron's claim that the connections between column electrodes illustrated in the patent figures are not the column wrap-around connections of other claims (Neodron Resp. Br. at 12) runs afoul of the principle that a claim construction that excludes the preferred embodiments is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996). Neodron's position also is contrary to the requirement in 37 C.F.R. § 1.83 that "[t]he drawing in a non-provisional application must show every feature of the invention specified in the claims." And Neodron's argument that a person of ordinary skill in the art would "understand that the 'column wrap-around' connection *would be the same* as the 'row wrap-around connection,' but applied to a column" (Neodron Resp. Br. at 12, emphasis in original) is plainly wrong. If a column wrap-around connection were the "same" as a row wrap-around connection but applied to a column as Neodron argues, such a column wrap-around connection would necessarily connect the row sensing electrode at the top of the column to the column sensing electrode at the bottom of the column. This is shown in the modified version of Figure 3 below, in which the row and column connections have been removed and the row wrap-around connection from the top row has been applied to the column on the left. This "same" wrap-around connection applied to a column necessarily connects to a row sensing electrode (as shown in the upper left corner of annotated Figure 3 below) rather than a column sensing electrode because the row sensing electrode stretches across the entire top portion of the sensing cell at the top of the column on the left side of Figure 3. Accordingly, a person of ordinary skill would recognize that a column wrap-around connection configured this way would not connect the column sensing electrodes of sensing cells at the edge of the sensing area, as required by claim 4.




Fourth, Neodron's citation to the file history (Resp. Br. at 11) does not support its around-the-entire-sensing-area construction, because Neodron cannot point to any statement in the file history that a row wrap-around connection must wrap around the entire sensing area. Rather, Neodron emphasizes a statement that "Mabusth does not show or teach electrodes of sensing cells at opposing ends of a row (or column) connected **using a wrap-around connection**." Neodron Resp. Br. at 11 (emphasis in original). But that statement (about Mabusth Figure 4) is consistent with Defendants' construction, because the lone connection 46 made to the last electrode in the far-left column runs through (in the two-dimensional sense) or underneath (in the three-dimensional sense) the other electrodes in the row, rather than wrapping around them. The final sentence of that passage has no bearing on what a row wrap-around connection must wrap around. The same is true for every other part of the passage Neodron cites. Ambiguous statements like these fall far short of the exacting standard required for prosecution history disclaimer. *Thorner*, 669 F.3d at 1366.

Finally, the Court should reject Neodron's proposed construction because is not clear

what Neodron even means by "wrap around … the sensing area." "Wrap around" in Neodron's proposed construction, for instance, cannot mean "encircle," because the highlighted row wrap-around connection in the excerpt of Figure 3 below does not encircle the entire sensing area, as Neodron's proposed construction suggests it must:




So Defendants and the Court are left to wonder what Neodron means by "wrap around … the sensing area." Arguably, it could mean the connections must have the shapes depicted in Figure 3, or it could mean that other connections with different shapes that connect the electrodes at opposing ends of a row also "wrap around … the sensing area" under Neodron's ambiguous proposal. For example, would Neodron claim that the yellow-highlighted connection in the hypothetical figure below qualifies as a row wrap-around connection under its proposed construction?




Similarly, does Neodron claim that the connection to the row electrodes must be made at the end

of the electrode rather than the top of the electrode, as shown in the second hypothetical figure below? And if Neodron claims that the connection in the figure below is not a wrap-around connection, then why? After all, claim 1 does not recite that the row wrap-around connection must wrap around from <u>the ends</u> of sensing electrodes in sensing cells at opposite ends of a row.




Finally, if Neodron contends the connection in the hypothetical figure above does "wrap around… the sensing area," then why does Neodron contend that connection 40 in Figure 3 is not a column wrap-around connection as discussed above? Nothing in Neodron's proposed construction answers these questions, so a jury faced with this construction would not know how to apply it to the accused products and the prior art.

For all of these reasons, the Court should reject Neodron's attempt to redefine claim 1 by adding a requirement that a row sensing electrode must "wrap around … the sensing area", which is contrary to the claim language and finds no support in the specification or the file history. Defendants' construction, on the other hand, is the plain and ordinary meaning of the phrase, and it makes clear that neither wrapping nor running around the sensing area is required by the claim language.

Dated: June 5, 2020

/s/ *John M. Guaragna*
John M. Guaragna
Brian Erickson

DLA PIPER LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Sean C. Cunningham (*pro hac vice*)
Erin P. Gibson (*pro hac vice*)
Robert Williams (*pro hac vice*)
David R. Knudson (*pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701

Erik Fuehrer (*pro hac vice*)
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

Counsel for Defendants Microsoft Corporation and HP Inc.

/s/ *Marc J. Pensabene*
Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (Cal. Bar No. 247738)
nwhilt@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (N.Y. Bar No. 2656361)
mpensabene@omm.com
O'MELVENY & MYERS LLP
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061

John C. Kappos
jkappos@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Darin Snyder
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Attorneys for Defendants Samsung Electronics, Co., Ltd. and Samsung Electronics America, Inc.

By: /s/ *Michael J. Newton*

Michael J. Newton (TX Bar No. 24003844)
Brady Cox (TX Bar No. 24074084)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
mike.newton@alston.com
brady.cox@alston.com

Charles A. Naggar (admitted pro hac vice)
NY Bar No. 5356449
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 11230

Phone: (212) 210-9400
Fax: (212) 210-9444
charles.naggar@alston.com

John M. Guaragna (TX Bar No. 24043308)
Brian K. Erickson (TX Bar No. 24012594)
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Phone: 512.457.7000
Fax: 512.457.7001
john.guaragna@dlapiper.com
brian.erickson@dlapiper.com

Sean C. Cunningham (admitted pro hac vice)
CA Bar No. 98895
Erin Gibson (admitted pro hac vice)
CA Bar No. 229305
Robert Williams (admitted pro hac vice)
CA Bar No. 246990
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Phone: 619.699.2700
Fax: 619.699.2701
sean.cunningham@dlapiper.com
erin.gibson@dlapiper.com
robert.williams@dlapiper.com

Jeffrey T. Lindgren (admitted pro hac vice)
CA Bar No. 176400
Vasquez Benisek & Lindgren LLP
1550 Parkside Drive, Suite 130
Walnut Creek, CA 94596
925-627-4250
Fax: 925-403-0900
jlindgren@vbllaw.com

Richard C. Vasquez (admitted pro hac vice)
CA Bar No. 127228
Vasquez Benisek & Lindgren LLP
1550 Parkside Drive, Suite 130
Walnut Creek, CA 94596
Phone: 925-627-4250
Fax: 925-403-0900
rvasquez@vbllaw.com

M. Craig Tyler
Perkins Coie LLP
500 W. 2nd Street
Suite 1900
Austin, TX 78701
Phone: 737.256.6100
Fax: 737.256.6300
CTyler@perkinscoie.com

Chao (Wendy) Wang (admitted pro hac vice)
CA Bar No. 289325
NY Bar No. 5002704
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Phone: 650-838-4500
Fax: 650-838-4350
wwang@perkinscoie.com

Tariq Javed (admitted pro hac vice)
DC Bar No. 1618071
Perkins Coie LLP
700 Thirteenth Street N.W., Suite 800
Washington, DC 20005
Phone: 202-654-6200
Fax: 202-654-6211
TJaved@perkinscoie.com

Attorneys for Defendant
Dell Technologies Inc.

/s/ Nathan Sabri
Stefani E. Shanberg (Texas Bar No. 24009955)
sshanberg@mofo.com
Nathan B. Sabri (admitted pro hac vice)
nsabri@mofo.com
Robin Brewer (admitted pro hac vice)
rbrewer@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-7000

Attorneys for Defendant Amazon.com, Inc.

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed on June 5, 2020, pursuant to Local Rule CV-5(a), and has been served on all counsel whom have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*John M. Guaragna*
John M. Guaragna