# EXHIBIT 6

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Peter Sleeman |
| Filed: | December 2, 2010 |
| Examiner: | Chun-Nan Lin |
| Group Art Unit: | 2693 |
| Confirmation No.: | 4534 |
| Title: | POSITION SENSING AND FORCE DETECTION PANEL |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

**Response Under 37 C.F.R. § 1.111**

In response to the Non-Final Office Action dated October 19, 2012, Applicant respectfully requests the Examiner to reconsider the rejections of the claims in view of the following amendments and remarks. Please amend the Application as follows.

**In the Drawings**

Applicant submits the attached Replacement Sheets of drawings to replace the corresponding sheets of originally-filed drawings. None of these amendments to the Drawings are narrowing or introduce any new matter. Acceptance and entry of these Replacement Sheets is respectfully requested.

**In the Specification**:

Please amend paragraphs [0030]-[0032] on pages 6-7 of the Specification as follows:

[0030] With reference to FIG. 3, a first exemplary circuit 32 that includes a resistive force sensitive element 30 is shown and described. The circuit 32 is in communication with an input of a current integrator 22 of the control unit 20. The control unit 20 is connected to a ground rail 19 and a fixed voltage supply rail **[[23]]** 27 that has a voltage $V_{dd}$. A resistive force sensitive element 30 having a value $R_Q$ is connected between the fixed voltage supply rail **[[23]]** 27 and the current integrator input 21 of the control unit 20. The current integrator input 21 acts as a virtual earth having a voltage $V_n$. Having the resistive force sensitive element 30 and the control unit 20 both connected to the same voltage supply rail **[[23]]** 27 allows the circuitry within the control unit 20, which measures the integrated current value, to be referenced to the voltage supply rail. This configuration may also allow the measurement to be made ratiometric and substantially decoupled from any changes in the supply rail voltage $V_{dd}$. Although the supply rail voltage $V_{dd}$ can be a fixed voltage, there may be unintended fluctuations in the supply rail voltage $V_{dd}$.

[0031] A limit resistor 24 having a value $R_L$ is connected in series with the resistive force sensitive element 30, between the fixed voltage supply rail **[[23]]** 27, and the current integrator input 21. The limit resistor may, for example, have a resistance value in the range 100Ω to 500Ω. The limit resistor 24 $R_L$ limits the maximum current flow through the resistive force sensitive element 30 to the current integrator input 21 if the resistance of the resistive force sensitive element 30 drops to a low value. This configuration can prevent the current from exceeding a maximum value that can be accepted and measured by the current integrator 22. The resistance of some QTC materials can drop to a relatively low value when subjected to a large applied force.

[0032] A bias resistor 25 having a value $R_B$ is connected between the fixed voltage supply rail **[[23]]** 27 and the limit resistor 24 in parallel with the resistive force sensitive element 30. In some instances, the resistance of some QTC materials can

rise to a high value when not subjected to an applied force. The bias resistor 25 provides a DC current path if the resistance of the resistive force sensitive element 30 rises to a very high value. The bias resistor 25 may, for example, have a resistance value of 1 MΩ or more.

Please amend paragraph [0036] on page 8 of the Specification as follows:

[0036] With reference to FIG. 4, another circuit 33 that includes a QTC resistive force sensitive element 30 is shown and described. The resistive force sensitive element 30 is in communication with a control unit 20. The control unit 20 is connected to a ground rail 19 and a fixed voltage supply rail **[[23]]** **27** that has a voltage $V_{dd}$.

Please amend paragraph [0044] on page 9 of the Specification as follows:

[0044] With reference to FIG. 5, another example of a circuit 34 is shown and described. The circuit 34 includes three QTC resistive force sensitive elements 30a, 30b, and 30c in communication with the control unit 20. Also, the control unit 20 is connected to a ground rail 22 and a fixed voltage supply rail **[[23]]** **27** that has a voltage $V_{dd}$.

Please amend paragraph [0048] on page 10 of the Specification as follows:

[0048] A respective bias resistor 25a, **[[25]]** **25b**, 25c is connected between each voltage driver output 26a, 26b, 26c and a respective limit resistor 24a, 24b, 24c in parallel with a respective resistive force sensitive element 30a, 30b, 30c.

**In the Claims**:

1. **(Currently Amended)** A touch sensor comprising:

a controller comprising a voltage driver and an integrator circuit with an input;

a plurality of first electrodes formed of a first conductive material and arranged in a first direction in a sensing area, each of the plurality of electrodes in communication with the controller**, the plurality of first electrodes configured to be driven by the voltage driver**;

a plurality of second electrodes formed of a second conductive material and arranged in a second direction different from the first direction such that the first and second electrodes are coupled with each other to form touch sensing nodes in the sensing area, each of the second plurality of electrodes in communication with the controller;

a variable resistance element in communication with the voltage driver and the input of the integrator circuit, and configured to change a parameter of the element in response to a force applied thereto wherein the integrator circuit is configured to measure the parameter over a period of time **and wherein the variable resistance element is configured to be driven by the voltage driver**; and

circuitry configured to determine an amount of force applied to the sensor in response to the measured parameter.

2. (Original) The touch sensor of claim 1 wherein the parameter is current flowing through the variable resistance element.

3. (Original) The touch sensor of claim 1 wherein the variable resistance element comprises a Quantum Tunnel Composite (QTC) material.

4. (Original) The touch sensor of claim 1 wherein the controller provides an alternating voltage via the voltage driver to the variable resistance element.

5. (Original) The touch sensor of claim 1 wherein the variable resistance element comprises a force sensitive resistor.

6. (Original) The touch sensor of claim 1 further comprising another variable resistance element in communication with another voltage driver of the controller and the input of the integrator circuit of the controller.

7. **(Currently Amended)** A touch sensitive device comprising:

a housing;

a controller, within the housing, comprising a voltage driver and an integrator circuit with an input;

a touch sensitive position-sensing panel housed partially within the housing, the touch sensitive position-sensing panel comprising:

a plurality of first electrodes formed of a first conductive material and arranged in a first direction in a sensing area of the panel, each of the plurality of electrodes in communication with the controller**, the plurality of first electrodes configured to be driven by the voltage driver**; and

a plurality of second electrodes formed of a second conductive material and arranged in a second direction different from the first direction such that the first and second electrodes are coupled with each other to form touch sensing nodes in the sensing area, each of the second plurality of electrodes in communication with the controller; and

a variable resistance element in communication with the voltage driver and the input of the integrator circuit, and configured to change a parameter of the element in response to a force applied thereto wherein the integrator circuit is configured to measure the parameter over a period of time **and wherein the variable resistance element is configured to be driven by the voltage driver**; and

circuitry configured to determine an amount of force applied to the sensing area of the touch sensitive panel in response to the measured parameter.

8. (Original) The touch sensitive device of claim 7 wherein the parameter is current flowing through the variable resistance element.

9. (Original) The touch sensitive device of claim 7 wherein the variable resistance element comprises a Quantum Tunnel Composite (QTC) material.

10. (Original) The touch sensitive device of claim 7 wherein the controller provides an alternating voltage via the voltage driver to the variable resistance element.

11. (Original) The touch sensitive device of claim 7 wherein the variable resistance element comprises a force sensitive resistor.

12. (Original) The touch sensitive device of claim 7 further comprising another variable resistance element disposed within the housing in communication with another voltage driver of the controller and the input of the integrator circuit of the controller.

13. (Original) A force sensor, for a touch sensor, the force sensor comprising:

a variable resistance element having a first node in communication with a voltage driver of a controller of the touch sensor and a second node;

a bias resistance element connected in parallel with the variable resistance element; and

a limiting resistance element in communication with the second node of the variable resistance element and an input of an integrator of the controller.

14. (Original) The force sensor of claim 13 wherein the variable resistance element comprises a Quantum Tunnel Composite (QTC) material.

15. (Original) The force sensor of claim 13 wherein the variable resistance element receives an alternating voltage from the controller via the voltage driver.

16. (Original) The force sensor of claim 13 wherein variable resistance element comprises a force sensitive resistor.

17. (Original) The force sensor of claim 13 wherein the controller is in communication with a plurality of drive electrodes and sense electrodes of a touch sensitive panel of the touch sensor.

**Remarks**

This Application has been reviewed carefully in light of the Non-Final Office Action dated October 19, 2012. Applicant appreciates the Examiner's consideration of the Application. Although Applicant believes all claims are allowable without amendment, to advance prosecution Applicant has made clarifying amendments to Claims 1 and 7. None of these amendments are considered necessary for patentability. Additionally, Applicant does not admit that these amendments are made in response to or necessitated by any cited reference or combination of references. Applicant respectfully requests reconsideration and allowance of all pending claims.

**The Specification Informality**

The Office Action requests that Applicant make a change to paragraph [0048] referenced on page 10 of the Specification. Applicant has made the requested amendment.

**The Declaration is Clear**

The Office Action states the Declaration is unclear. Athough the basis for the remark made in the Office Action is unclear and not explained, Applicant provides with this submission a darkened copy of the Declaration that was originally filed on December 2, 2010.

**The Claim Objections should be Withdrawn**

The Office Action objects to Claims 1 and 7 due to alleged informalities, stating that "circuitry" should be changed to "a circuitry." However, Applicant respectfully notes that "circuitry" is commonly, and likely most commonly, used without an indefinite article. The term "circuitry" would be clear to one of ordinary skill in the art. For at least these reasons, Applicant respectfully requests that the objections to the claims be withdrawn.

**The Claims are Allowable over the Proposed *Bernstein-Obermeyer* Combination**

The Office Action rejects Claims 1-2, 4-8, 10-12, and 15-17 under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent Application Publication 2011/0141052 A1 ("*Bernstein*") in view of U.S. Patent Application Publication No. 2009/0213073 A1 ("*Obermeyer*"). The Office Action also rejects Claims 3, 9, and 14 under 35 U.S.C. § 103(a) as being unpatentable over *Bernstein* in view of *Obermeyer* and further in view of U.S. Patent

Application Publication No. 2011/0215914 A1 ("*Edwards*"). Applicant respectfully traverses these rejections, discussing Claims 1 and 13 as examples.

Claims 1-12 are Allowable over the Proposed *Bernstein-Obermeyer* Combination

At a minimum, the proposed *Bernstein-Obermeyer* combination fails to disclose, teach, or suggest the following limitations recited in Claim 1:

- a plurality of first electrodes formed of a first conductive material and arranged in a first direction in a sensing area, each of the plurality of electrodes in communication with the controller, ***the plurality of first electrodes configured to be driven by the voltage driver***;
- a variable resistance element in communication with the voltage driver and the input of the integrator circuit, and configured to change a parameter of the element in response to a force applied thereto wherein the integrator circuit is configured to measure the parameter over a period of time and ***wherein the variable resistance element is configured to be driven by the voltage driver***

For example, the cited portions of the proposed *Bernstein-Obermeyer* combination fail to disclose, teach, or suggest "a plurality of first electrodes . . . configured to be driven by the voltage driver" and "a variable resistance element . . . configured to be driven by the voltage driver,"as recited in amended Claim 1. The Office Action relies on driver circuitry 166 of *Bernstein* to allegedly teach the claimed voltage driver and on horizontal electrodes 154 to allegedly teach the claimed plurality of first electrodes. *Office Action* at 3. However, driver circuitry 166 does not provide its drive signal to horizontal electrodes 154, nor any other component of its touch-sensing circuitry or force-sensing circuitry, let alone the particular elements recited in Claim 1. *See, e.g., Bernstein* at Figures 21 and 33 and paras. [0103], [0108], [0110], and [0126]. *Bernstein* explains that driver circuitry 166 provides drive signals to ***actuator 36*** (allowing actuator 36 to vibrate or otherwise impart movement to the touch pad) based on data provided by force-processing and touch-processing circuitry. *See Id.* Circuitry that merely interprets force and touch sensor data and then provides a drive signal to an actuator does not disclose, teach, or suggest a "plurality of first electrodes ***configured to be driven by the voltage driver***" or a "variable resistance element . . . ***configured to be driven by the voltage driver***," as recited in Claim 1. The proposed *Bernstein-Obermeyer* combination therefore fails to disclose, teach, or suggest various limitations of Claim 1.

For at least these reasons, Applicants respectfully request reconsideration and allowance of independent Claim 1 and its dependent claims. For at least certain analogous

reasons, Applicants respectfully request reconsideration and allowance of independent Claim 7 and its dependent claims.

Claims 13-17 are Allowable over the Proposed *Bernstein-Obermeyer* Combination

At a minimum, the proposed *Bernstein-Obermeyer* combination fails to disclose, teach, or suggest the following limitations recited in Claim 13:

- a bias resistance element connected in parallel with the variable resistance element
- a limiting resistance element in communication with the second node of the variable resistance element and an input of an integrator of the controller

For example, the cited portions of the proposed *Bernstein-Obermeyer* combination fail to disclose, teach, or suggest "a bias resistance element connected in parallel with the variable resistance element," as recited in Claim 13. The Office Action acknowledges that *Bernstein* does not disclose a bias resistance element but alleges that this limitation is disclosed by Figures 39 and 45 of *Obermeyer*, providing no explanation. *See Office Action*, p. 7-8. However, *Obermeyer* makes no mention of bias resistance, let alone the bias resistance element as recited in Claim 13. *See, e.g., Obermeyer* at Figures 39 and 45 and paras. [0299] and [0306]. Regardless, the Office Action does not identify any particular element of *Obermeyer* that allegedly discloses "a bias resistance element connected in parallel with the variable resistance element," as recited in Claim 13.

As another example, the cited portions of the proposed *Bernstein-Obermeyer* combination fail to disclose, teach, or suggest "a limiting resistance element in communication with the second node of the variable resistance element and an input of an integrator of the controller," as recited in Claim 13. The Office Action acknowledges that *Bernstein* does not disclose a limiting resistance element but alleges that this limitation is disclosed by Figures 17, 42, 43, and 45 of *Obermeyer*, providing no explanation. *See Office Action*, p. 7-8. However, *Obermeyer* makes no mention of a limiting resistance, let alone a limiting resistance element that is "in communication with . . . an input of an integrator of the controller." *See, e.g., Obermeyer* at Figures 17, 42, 43, and 45 and paras. [0278], [0303], [0304], and [0306]. Regardless, the Office Action does not identify any particular element of *Obermeyer* that allegedly discloses "a limiting resistance element in communication with the second node of the variable resistance element and an input of an integrator of the controller," as recited in Claim 13.

The proposed *Bernstein-Obermeyer* combination therefore fails to disclose, teach, or suggest various limitations of Claim 13. For at least these reasons, Applicants respectfully request reconsideration and allowance of independent Claim 13 and its dependent claims.

The Proposed *Bernstein-Obermeyer* Combination is Improper

Applicant respectfully submits that the Office Action has not provided an adequate explanation, either in the cited references or in the knowledge generally available to one of ordinary skill in the art at the time of Applicants' invention, for the proposed combination of *Bernstein* and *Obermeyer*. The claims are allowable for these additional reasons.

First, Applicant respectfully submits that the Office Action's conclusory assertions do not satisfy the stringent standards for establishing a *prima facie* case of obviousness. "Rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418, 127 S. Ct. 1727, 1741, 82 U.S.P.Q.2d 1385, 1396 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). Contrary to this requirement, the Office Action merely alleges that it would have been obvious to incorporate the cited portions of *Obermeyer* into Bernstein's touch pad, providing only the generic statement that "[t]he suggestion/motivation would have been in order to lower the manufacturing cost. (Obermeyer: [0016])." *Office Action* at 4. The Office Action provides no explanation of how alleged savings from using coil springs and plastic knobs in place of the traditional components of a six-axis controller would suggest the proposed modification of *Bernstein*'s touch pad.

Furthermore, the Office Action does not explain how the "rubber plug" relied on as allegedly teaching the claimed variable resistance element even *could* be incorporated into the touch pad of *Bernstein*. *See Obermeyer* at Figure 17 and para. [0278]. The cited portion of *Obermeyer* discloses a "rubber plug" formed inside a knob of a six-axis controller. *See Id.* The distortion of the "elastomeric legs" of this rubber plug provides an indication of the orientation of six-axis controller knob. *See Id.* at Figures 16-17 and paras. [0278]-[0280]. The Office Action provides no explanation of how this relatively large rubber plug could be incorporated into *Bernstein*'s touch pad.

Thus, it is unclear to Applicant how or why one or ordinary skill in the art would have modified the touch pad *Bernstein* with the "rubber plug" of *Obermeyer*'s six-axis controller. For at least these additional reasons, Applicant respectfully submits that the limitations of

Claims 1 would not have been obvious to one of ordinary skill in the art at the time of Applicant's invention in view of the cited references. Accordingly, Applicant respectfully requests reconsideration and allowance of independent Claim 1 and its dependent claims. For at least certain analogous reasons, Applicant respectfully requests reconsideration and allowance of Claims 7 and 13 and their dependent claims.

Dependent Claims 2-6, 8-12, and 14-17 are Allowable

Claims 2-6 depend from independent Claim 1, which Applicant has shown above to be clearly allowable over the proposed *Bernstein-Obermeyer* combination. Claims 8-12 depend from independent Claim 7, which Applicant has shown above to be clearly allowable over the proposed *Bernstein-Obermeyer* combination. Claims 14-17 depend from independent Claim 13, which Applicant has shown above to be clearly allowable over the proposed *Bernstein-Obermeyer* combination. Claims 2-6, 8-12, and 14-17 are therefore allowable at least because of their dependence on Claims 1, 7, and 13, respectively. Additionally, Claims 2-6, 8-12, and 14-17 recite further patentable distinctions over the cited references. To avoid burdening the record, and in view of the clear allowability of Claims 1, 7, and 13, Applicant does not specifically discuss these distinctions in this Response. However, Applicant reserves the right to discuss these distinctions in a future Response or on Appeal, if appropriate. Furthermore, Applicant does not admit that the proposed combination of *Bernstein*, *Obermeyer*, and *Edwards* is possible or that the Examiner has demonstrated the required teaching, suggestion, or motivation to combine these references. For at least these reasons, Applicant respectfully requests reconsideration and allowance of dependent Claims 2-6, 7-12, and 14-17.

**Request for Evidentiary Support**

Should a rejection based on any of the above asserted rejections be maintained, Applicants respectfully request appropriate evidentiary support. Additionally, if the Examiner is relying upon "common knowledge" or "well known " principles to establish the rejection, Applicants request that a reference be provided in support of this position pursuant to M.P.E.P. § 2144.03. Furthermore, to the extent that the Examiner maintains any rejection based on an "Official Notice" or other information within the Examiner's personal knowledge, Applicants respectfully request that the Examiner cite a reference as documentary

evidence in support of this position or provide an affidavit in accordance with M.P.E.P. § 2144.03 and 37 C.F.R. 1.104(d)(2).

**No Waiver**

Applicant's arguments and amendments are without prejudice or disclaimer. Additionally, Applicant has merely discussed example distinctions from the cited references. Other distinctions may exist, and Applicant reserves the right to discuss these additional distinctions in a later submission, if appropriate. By not responding to additional statements made in the Office Action, Applicant does not acquiesce to the additional statements.

**Conclusion**

Applicant has made an earnest attempt to place this case in condition for allowance. For at least the foregoing reasons, Applicant respectfully requests reconsideration and full allowance of all pending claims.

If the Examiner feels that a telephone conference would advance prosecution of this Application in any manner, the Examiner is invited to contact Chad D. Terrell, Attorney for Applicant, at the Examiner's convenience at 214.953.6813.

The Commissioner is authorized to charge $150.00 for a one-month extension of time to Deposit Account No. 02-0384 of Baker Botts L.L.P. Although Applicant believes no other fees are due, the Commissioner is authorized to charge any necessary additional fees and credit any overpayments to Deposit Account No. 02-0384 of Baker Botts L.L.P.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicant

Chad D. Terrell
Reg. No. 52,279

Date: February 19, 2013

**CORRESPONDENCE ADDRESS:**

at Customer No. **12323**


27 Vdd
25 RB
20
RQ 30
23
22
32
In 21
19 GND
RL 24

FIG. 3


27 Vdd
26
25 RB
23
20
RQ 30
33
22
In 21
19 GND
RL 24

FIG. 4

REPLACEMENT SHEET






FIG. 5